IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NILS AMES,<br><br>        Plaintiff,<br><br>      v.<br><br>THE UNITED STATES POSTAL SERVICE,<br>an entity of THE UNITED STATES OF<br>AMERICA,<br><br>        Defendant. | Case No. 2:11-CV-145-SU<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

SULLIVAN, Magistrate Judge:

      Plaintiff Nils Ames brought this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), against the United States Postal Service, alleging personal injury as a result of a fall he suffered on January 27, 2009, in the U.S. Post Office building in Enterprise, Oregon. Plaintiff alleges his fall was caused by the government's negligence. Plaintiff sustained injuries to his upper leg and hip, resulting in economic damages including medical expenses and lost wages in

the amount of $47,670.36. Plaintiff claims non-economic damages for pain and suffering in the

1 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

amount of $200,000.

The fact of plaintiff's injuries from a fall at the Post Office and his economic damages are not in dispute. There is much dispute, however, regarding the events as they occurred on January 27, 2009, including the cause of plaintiff's fall and whether defendant is liable for plaintiff's injury. Plaintiff alleges he slipped on the floor in the work area of the Post Office while pulling a cart with mail through the back entrance. Plaintiff maintains the government was negligent in failing to provide water absorbent mats at the rear entrance to the Post Office during inclement weather. Conversely, defendant contends there are many and varied accounts of what occurred on that day to cause plaintiff's fall. As such, plaintiff is unable prove it was the government's failure to place water absorbent mats at the rear entrance that caused his fall and the attendant injuries. Alternatively, the government contends any award of damages for plaintiff must be reduced in proportion to the percentage of fault attributable to plaintiff for his failure to: (1) wear his foot brace; (2) attempt to remove snow and ice from his boots prior to entering the postal facility; and (3) push, rather than pull, the cart through the doors causing the doors to hit his cart and throw him off balance.

This case was tried before the Honorable Patricia Sullivan, United States Magistrate Judge,[1] on May 10, 2012, in Enterprise, Oregon. The court has now heard the testimony of the witnesses, reviewed all documents admitted into evidence and considered the contentions and arguments of counsel. In accordance with FED. R. CIV. P. 52(a), the court makes the following findings of fact and conclusions of law:

---

[1] The FTCA does not provide for a trial by jury. The parties consented to jurisdiction over this matter by the magistrate judge pursuant to 28 U.S.C. § 636(c).

2 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

FINDINGS OF FACT

1. At all material times defendant occupied the U.S. Post Office building in Enterprise, Oregon, and was responsible for its upkeep and maintenance.

2. Plaintiff was, at the time of the incident that resulted in his injury, a physically active 78 year old man.

3. Plaintiff's wife is Sheila Ames, a contract mail carrier for defendant. Plaintiff worked for Sheila Ames as a mail carrier in rural northeast Oregon. His duties included picking up mail in the morning, delivering mail to rural postal customers, and returning mail to the Post Office that he picked up from rural customers on his route.

4. On January 27, 2009, at approximately one o'clock p.m., plaintiff was returning to the Post Office with mail he had collected on his route. Plaintiff placed the mail in a cart Sheila Ames provided for purposes of transferring the mail. The cart was a pull cart as distinguished from a Post Office issue push cart. The Postmaster had never instructed either Sheila Ames or plaintiff to use the push cart.

5. Plaintiff was on the Post Office premises as a part of his duties as an employee of a contract mail carrier.

6. Plaintiff entered the Post Office by way of the back entrance which leads to the nonpublic work area of the building and is used by employees of the Post Office and contract carriers.

7. On January 27, 2009, the weather in Enterprise, Oregon, was inclement, with snow and ice on the ramp leading to the back entrance and snow blowing onto the outside loading dock. There was no roof over the ramp.

8. The back entrance to the Post Office consists of two sets of double doors which are

3 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

opened by pushing them. There were no water absorbent mats either at the outside door, between the two sets of doors or at the inside door.

    9. There were two small carpet squares on the left side of the outside door and one small door mat on the right side of the outside door. Neither of the carpet squares were water absorbent. The door mat was of the type used to scrape mud off of shoes. The carpet squares, described as "rinky dink," had been placed by Linda Anderson, the Post Office custodian at the relevant time, in order to clean mud off her shoes. A container of ice-melt was on one of the carpet squares and a snow shovel was on the door mat.

    10. When the Post Office building was owned and maintained by the United States' General Services Administration, water absorbent mats had been used at all entrances including the back entrance. Sheila Ames was the custodian at that time. No water absorbent mats had been used since at least 2003, when Anderson was employed by the Post Office as a custodian.

    11. Defendant admits Plaintiff's Exhibit 7, a manual entitled "Housekeeping Postal Facilities," was in effect at the time of plaintiff's accident. Postmaster Mike Warner may have seen this manual. He did not provide the manual to Anderson, nor had she ever seen it. The manual states, in pertinent part, "lay out safety mats in wet weather" in the lobby and service areas. (Pl.'s Ex. 7 at 6 (Housekeeping Postal Facilities 4-16).) There were no safety mats at the back entrance to the Post Office.

    12. Defendant admits Plaintiff's Exhibit 8, "Supervisor's Safety Handbook" was in effect at the time of plaintiff's accident. Neither Postmaster Warner nor Anderson had ever seen this document. The document states: "Place rubber mats or all-weather mats at entrances, including lobby areas, when inclement weather develops." (Pl.'s Ex. 8 at 3 (Supervisor's Safety Handbook

57).)  Neither rubber nor all-weather mats were at the back entrance of the Post Office on January 27, 2009.

13.  Anderson's work sheet did not include putting out all weather mats during inclement weather as part of her duties.

14.  Plaintiff was the only witness to the accident.

15.  At the time of the accident, plaintiff was wearing high top boots with deep tread traction soles of the kind that could trap snow and ice in the tread.  Plaintiff walked up the snow and ice covered ramp to the back door of the Post Office.  Plaintiff was pulling the mail cart and, when he entered the building, he stepped on the tile floor and fell.  Plaintiff fractured his femur where it attaches to his hip.

16.  Postmaster Warner found plaintiff on the floor, helped him get into a chair and called Sheila Ames.  Sheila Ames called an ambulance after plaintiff complained of pain.

17.  There was no evidence of a foreign substance on the floor where plaintiff fell, a defect in the floor tiles, or any item on the floor that would cause plaintiff to slip or trip.  There is circumstantial evidence that snow, ice or water may have been on plaintiff's boots.

18.  There is no evidence that anyone observed the floor immediately after the accident to see if water was present.  Postmaster Warner testified he did not see water on the floor, but he did not look, nor did he ask plaintiff about anything on the floor.

19.  In an incident report, Postmaster Warner stated plaintiff could have had snow on the bottom of his boots but, nevertheless, concluded plaintiff tangled his legs, tripped and fell.  Postmaster Warner admitted this conclusion was speculation as he did not see the accident and did not ask plaintiff what happened.

20.  Plaintiff had back surgery in 1970 resulting in a condition called "drop foot."  When plaintiff wears low shoes, such as gym shoes, he wears a brace on his ankle. If plaintiff wears cowboy boots or high snow boots, including the boots he was wearing on the day of the accident, he does not wear the brace as the boots provide the same support as the brace.  Dr. Scott Siebe, plaintiff's doctor for 31 years, stated plaintiff never had any trouble ambulating or keeping his balance due to his drop foot condition.  Sheila Ames and two other friends of plaintiff testified plaintiff was an expert skier, a frequent dancer and had no problems with balance or ambulation.

21.  Plaintiff had not been observed by any of the witnesses, including Postmaster Warner, to have trouble ambulating, tripping or stumbling over his feet or wagon at any time.

22.  A Department of Labor OSHA incident report sent to Postmaster Warner indicated that the doors directly harmed plaintiff.

23.  As a result of the injury suffered by plaintiff, he underwent surgical repair including the installation of a hip screw and plate, he was hospitalized for five days at Grande Ronde Hospital in La Grande, Oregon, and was hospitalized for rehabilitation at Wallowa Memorial Hospital for approximately two weeks.  Plaintiff suffered pain and emotional distress as a result of the accident.

24.  Prior to the accident, plaintiff was active as an expert skier and ski instructor, a musician who played the drums, bass and saxophone, a recreational dancer, a handyman, carpenter and mechanic.  Plaintiff built one house, partially built another house, and restored old cars and trucks. Plaintiff drove the team bus for Joseph High School athletics and helped with the high school band. As a result of plaintiff's injury, he no longer skis, plays the drums or bass and can no longer work on his home or cars.  He experiences limitations due to the injury to his hip including difficulty in standing or walking for extended periods of time, weakness and lack of strength, and he engages in

less physical activities than prior to his injury. Plaintiff does continue to drive his rural mail route for approximately six hours at a time.

25. Based upon a stipulation of the parties, plaintiff's reasonable and necessary medical expenses are $43,636.36.

26. Based upon a stipulation of the parties, plaintiff's wage loss is $4,034.

## CONCLUSIONS OF LAW

1. The FTCA waives the government's sovereign immunity for tort claims arising from negligence. Under the FTCA, a plaintiff may sue the government "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Oregon law applies in this case. *See Oberson v. USDA*, 514 F.3d 989, 999 (9th Cir. 2008); *accord Voight v. USA*, Case No. 3:10-CV-01529-HZ, 2012 WL 2150331, at *2 (D. Or. June 11, 2012).[2]

2. Under Oregon law, to prove a negligence claim, plaintiff must show: (1) defendant owed him a duty; (2) defendant breached the duty; and (3) the breach was the cause in fact of some legally cognizable damage to plaintiff. *Brennen v. City of Eugene*, 285 Or. 401, 405, 591 P.2d 719, 722 (1979); *accord Cain v. Bovis,* 817 F. Supp. 2d 1251, 1279 (D. Or. 2011).

3. A threshold question is plaintiff's status at the time of the accident. Oregon adheres to the traditional rules governing the liabilities of an owner or possessor of land, under which the duties that the occupier owes to a person who comes on the land depends upon whether the person is an

---

[2] *Voight* is a recent case decided by Oregon District Court Judge Marco Hernandez which has been supplied by defendant as authority on the issue of comparative fault. Because the facts of *Voight* are distinguishable from the circumstances here, the decision is not controlling in this case.

7 - FINDINGS OF FACT AND CONCLUSIONS OF LAW

invitee, licensee, or trespasser. *Walsh v. C & K Market, Inc.*, 171 Or. App. 536, 539, 16 P.3d 1179 (2000).

    4. An invitee is one who comes on the premises for business that concerns the occupier or possessor, with the occupier's express or implied invitation. *Id.* at 536.

    5. The possessor of the premises has a duty to warn an invitee of latent dangers and "also has an affirmative duty to protect an invitee against those dangers in the condition of the premises of which he knows or should have known by the exercise of reasonable care." *Rich v. Tite-Knot Pine Mill,* 245 Or. 185, 191, 421 P.2d 370 (1966); *Cain* at 1273 (premises liability and negligence are the same when a case is brought against the possessor of land).

    6. A claim which invokes the obligations of a possessor of land to an invitee has invoked a "special relationship" that takes the case out of the generalized standards of common law negligence as articulated in *Fazzolari v. Portland School Dist. No. 13*, 303 Or. 1, 734 P.2d 1326 (1987). *Thompson v. Klimp*, 101 Or. App. 127, 130, 789 P.2d 696 (1990).

    7. Under *Fazzolari,* defendant's liability for harm is generally analyzed in terms of the concept of reasonable forseeability rather than the more traditional duty of care. *Oregon Steel Mills, Inc. V. Coopers & Lybrand, LLP*, 336 Or. 329, 340-41, 83 P.3d 322 (2004). However, even when a plaintiff alleges a special relationship as the basis for defendant's duty, the scope of the duty may be defined or limited by common law principles such as forseeability. *Id.* at 341-42; *Stewart v. Kids Incorporated of Dallas, Oregon*, 245 Or. App. 267, 276, 261 P.3d 1272 (2011).

    8. The law presumes the exercise of due care and plaintiff must prove by a preponderance of the evidence that defendant was negligent. *Simpson v. Hillman,* 163 Or. 357, 363, 97 P.2d 527 (1940). While negligence may not be predicated upon conjecture, guesswork, or speculation, it is

not necessary to establish negligence by direct or positive evidence. *Id*. There must, however, be facts from which a reasonable inference of negligence may be drawn. *Id.*; *accord Bethel Sch. Dist. No. 2 v. Simplex Time Recorder Co.*, 185 F.3d 865 (Table), 1999 WL 397481 (9th Cir. May 26, 1999) (affirming dismissal of action because plaintiff's "theory of causation simply require[d] too much speculation"); *Cain*, 817 F. Supp. 2d at 1280.

9. The law in Oregon regarding comparative fault is governed by OR. REV. STAT. § 31.600, and provides, in part:

> (1) [A]ny damages allowed [to plaintiff] shall be diminished in the proportion to the percentage of fault attributable to the claimant.

In addition, comparative fault bars plaintiff's recovery if plaintiff's fault is greater than that of defendant. OR. REV. STAT. § 31.600(1); see *Bloodsworth v. U.S.,* No. CV 08-522-SU, 2010 WL 170261 at *4 (D. Or. Jan. 15, 2010).

10. As the fact-finder, it is my duty to assess the credibility of the witnesses and weigh the evidence as well as to draw inferences from the evidence as well as from my own common knowledge. *Wilson v. Piper Aircraft Corp*. 282 Or. 61, 69, 577 P.2d 1322 (1978).

11. The parties do not dispute plaintiff here is a business invitee to whom defendant owed a duty as defined by Oregon law.

12. The court concludes the duty owed to plaintiff was an affirmative duty to protect plaintiff from dangers that were foreseeable. The scope of the duty defendant owed to plaintiff included protecting him from a danger expressly recognized in defendant's "Housekeeping Postal Facilities" manual and "Supervisor's Safety Handbook," namely, to provide rubber mats, all-weather mats or an absorbent mat at entrances, including the back entrance used by plaintiff, in

inclement weather.[3]

13. As stated above, defendant does not contest plaintiff's injuries occurred as a result of the fall he experienced when he entered the building. Based upon a preponderance of the evidence, the court concludes plaintiff entered the building with snow or ice on his boots; there was no mat at the doorway to absorb the snow or ice that adhered to his boots; and plaintiff slipped as he stepped onto the tile floor.

14. Plaintiff consistently and credibly testified he slipped on the tile floor when he entered the building at the back door. He was the only one present at the time the accident occurred. Immediately following, the incident, he told Postmaster Warner he slipped. Sheila Ames also testified plaintiff told her he slipped when he came through the door.

15. The court affords little weight to the other reports, containing differing versions of the accident. Indeed, there are multiple medical reports with a variety of accounts of the accident, some of which are clearly not plausible. As stated by more than one doctor, medical personnel are more concerned about the injury to plaintiff and treatment than about the cause of the injury.

16. Accordingly, the court finds defendant's negligence was a cause of the injuries and damages sustained by plaintiff.

17. Regarding comparative fault, the court finds plaintiff's drop foot condition played no part in his fall as there was no evidence presented that plaintiff had any difficulty with balance,

---

[3] Plaintiff provided the court a case from Florida, *Kenny v. United States*, No. 8:10-cv-1083-T-27EAJ, 2012 WL 523624 (M.D. Fla. Feb. 16, 2012), which is a slip and fall case in a U.S. Post Office. While not controlling here, the case cites the "Supervisor's Safety Handbook" for the proposition the Post Office appreciated the risk involved to plaintiff. *Id*. at *4 ("The Supervisor's Handbook demonstrates that the Post Office was acutely aware of the risk of injury from wet floors and had procedures in place to address that risk.") The findings herein are consistent with that portion of *Kenny*.

ambulating, tripping, or pulling the mail cart. The boots he wore on the day of the accident were high top boots which obviated the need for his brace.

18. In addition, the court finds that while the two small carpet square could have been used by plaintiff to wipe his feet, there is insufficient evidence that these "rinky dink" carpet squares were adequate to allow plaintiff to remove the snow and ice from his boots.

19. Finally, the court finds plaintiff's use of the pull cart rather than the push cart was not a cause of the fall nor was plaintiff required by the Post Office to use the push cart for safety or any other reason.

20. Thus, the court concludes defendant failed to prove by a preponderance of the evidence that plaintiff was at fault when he slipped and fell on defendant's premises.

21. Plaintiff is entitled to $47,670.36 in economic damages.

22. Plaintiff suffered and continues to suffer pain as a result of his injury. Plaintiff is able, however, to continue to work and function in society. While he no longer enjoys some of his previous activities, he is not completely precluded from all activities by his injury. As such, plaintiff is entitled to $100,000 in non-economic damages for pain and suffering.

Accordingly, Judgment shall be entered in favor of plaintiff in the amount of $147,670.36.

IT IS SO ORDERED.

DATED this 26th day of June, 2012.

    /s/ Patricia Sullivan
    Patricia Sullivan
    United States Magistrate Judge
11 - FINDINGS OF FACT AND CONCLUSIONS OF LAW